IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GOLDEN ENTERTAINMENT, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 20-cv-02811-LKG<br><br>Dated: June 22, 2023 |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

In this employment discrimination action, Plaintiff, the United States Equal Employment Opportunity Commission ("EEOC"), brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII"), against Defendant, Golden Entertainment, Inc., related to the alleged sexual harassment of, and retaliation against, Lisa Payton, while she was employed at the Rocky Gap Casino and Resort ("Rocky Gap"). ECF No. 39. Defendant has moved for summary judgment on the EEOC's employment discrimination claims, pursuant to Fed. R. Civ. P. 56. *See* ECF No. 38. This motion is fully briefed. *See* ECF Nos. 38-1; 39; 41. No hearing is necessary to resolve the motion. *See* L.R. 105.6 (D. Md. 2021). For the reasons that follow, the Court **GRANTS-in-PART** and **DENIES-in-PART** Defendant's motion.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

In this employment discrimination action, the EEOC alleges that Defendant discriminated and retaliated against its former employee, Lisa Payton, upon the basis of sex, while she was employed at the Rocky Gap Casino and Resort, in violation of Title VII.  *See* Pl. Mem., ECF No. 39.  Specifically, the EEOC asserts the following claims against Defendant in the complaint: (1) hostile work environment (sexual harassment); (2) retaliation; and (3) constructive discharge.  Compl. at ¶¶ 17-18.  As relief, the EEOC seeks, among other things, certain injunctive relief and to recover back pay, compensatory and punitive damages on behalf of Ms. Payton.  *Id.* at ¶¶ A-I.

Defendant, Golden Entertainment, Inc., owns and operates Rocky Gap, which is located in Flintstone, Maryland.  Joint Record ("J.R.") at 967.  Plaintiff, the EEOC, is the agency of the United States of America that is charged with the administration, interpretation, and enforcement of Title VII.  Compl. at ¶ 3.  Lisa Payton is a female who was previously employed by Defendant as a bartender at Rocky Gap.  Compl. at ¶ 17(a).

Ms. Payton's Employment History

As background, Lisa Payton began working as a bartender at Rocky Gap on May 31, 2017.  J.R. at 653-54.  Ms. Payton's duties as a bartender involved taking drink orders, serving drinks, taking payments, keeping the back of the bar clean, making drinks consistent and following recipes.  *Id.* at 656-60; 919-22.

Rocky Gap has two bars known respectively as: (1) On The Rocks ("OTR") and (2) A Little Munch ("ALM").  *Id.* at 2; 475-76.  OTR is located at the center of the Casino floor, while ALM is located at the entrance to the Casino floor near the lobby.  *Id.*

It is undisputed that, after Ms. Payton completed her training, she was assigned to work at both OTR and ALM at various times during the workweek.  *Id.* at 477.  In this regard, Defendant maintains that its expectation was for all Rocky Gap bartenders to work whichever bar management scheduled them to work on any given shift.  ECF No. 38-1 at 4.  But, the EEOC counters that Ms. Payton was hired with the understanding that she would work primarily at

---

[1] The facts recited in this memorandum opinion and order are taken from the complaint (ECF No. 1); Defendant's motion for summary judgment (ECF No. 38); the memorandum in support thereof (ECF No. 38-1); Plaintiff's response in opposition to Defendant's motion for summary judgment (ECF No. 39); and the Joint Record ("J.R.").  Unless otherwise noted, the facts recited herein are undisputed.

OTR, given her prior experience, management potential and skill set as a bartender.  ECF No. 39 at 8.

It is undisputed that Ms. Payton earned a wage of $5.60 per hour in connection with her employment at Rocky Gap.  J.R. at 968; 685.  The parties also agree that Ms. Payton received cash and credit card tips in connection with her work as a bartender.  *Id.* at 786.

In this regard, Ms. Payton maintains that bartenders at Rocky Gap typically earn between $200 to $350 on a typical Saturday night while working at OTR.  *Id.* at 587; 595; 732-33.  By comparison, Ms. Payton maintains that the amount of tips is significantly lower at ALM and that she typically earned $35 a shift in tips while working at ALM.  *Id.* at 732-33; ECF No. 39 at 14.

<u>Ms. Payton's Allegations Of Sexual Harassment</u>

It is undisputed that Ms. Payton and another Rocky Gap bartender, William Brian Olinger, worked together when Ms. Payton was assigned to work a shift at OTR.  J.R. at 1073-79.  Ms. Payton alleges that Mr. Olinger began sexually harassing her during her orientation and that Mr. Olinger continued to harass her until the termination of her employment at Rocky Gap.  ECF No. 39 at 8; 15.

Specifically, Ms. Payton alleges that, during her orientation, Mr. Olinger looked directly at her and commented about her buttocks while she was touring the Casino.  J.R. at 703-06; 1236.  Ms. Payton also alleges that, during her training sessions with Mr. Olinger, Mr. Olinger would sniff and smell her and whisper in her ear such things as:  "you smell good enough to eat," and "I could eat you from front to back."  *Id.* at 711-12; 714; 1236.  Ms. Payton further alleges that she told Mr. Olinger that he was making her uncomfortable, but that Mr. Olinger continued to engage in this conduct.  *Id.*

It is undisputed that Defendant assigned Ms. Payton to work with Mr. Olinger at OTR after she completed training.  *Id.* at 1073-79.  Ms. Payton alleges that Mr. Olinger became more aggressive at this time. *Id.* at 710-11.  In this regard, Ms. Payton alleges that Mr. Olinger constantly commented on her buttocks by saying:  "Oh, you work out- I bet you spend a lot of time on that ass;" "Oh, what I would do to your ass;" and "Oh, one night with your ass."  *Id.* at 745; 1236.  Ms. Payton also alleges that Mr. Olinger would whisper in her ear about things he would like to do to her buttocks, and that Mr. Olinger would also grope her buttocks and touch her hips.  *Id.* at 691-92; 1236.  Ms. Payton also alleges that she reiterated to Mr. Olinger on several occasions that his conduct made her uncomfortable.  *Id.* at 1236.

3

In addition, Ms. Payton alleges that, on two occasions, Mr. Olinger came behind her while she was pouring beer from a tap, reached around her, and pressed himself against her buttocks, so that she could feel his genitals pressing into her. *Id.* at 731-32; 734; 939. Ms. Payton alleges that on one such occasion, Mr. Olinger's conduct was witnessed by another co-worker at Rocky Gap, Jana Cannon. *Id.* at 1167-68. Ms. Cannon corroborates this incident, and she states in her Declaration that Ms. Payton was visibly shaken by the alleged assault. *Id.*

<u>Ms. Payton's Report Of Sexual Harassment</u>

On July 14, 2017, Ms. Payton reported Mr. Olinger's conduct to her supervisors, Donald Hovatter and Richard Langton. *Id.* at 731-32; 736-37. On July 19, 2017, Ms. Payton contacted Rocky Gap's human resources department to lodge a sexual harassment complaint against Mr. Olinger. *Id.* at 739.

Ms. Payton alleges that Mr. Olinger's conduct did not cease after she reported his sexual harassment to Defendant. In this regard, Ms. Payton alleges that, on July 19, 2017, Mr. Olinger approached her from behind the bar and pressed his genitals against her buttocks. *Id.* at 1236-37. Ms. Payton also alleges that Mr. Olinger would lean into her and make comments in her ear such as: "I'll make whatever comments I want to make about your rear-end and nothing is going to be done about it," when they would go to the Casino vault to get money for the bars. *Id.* at 724-26.

Ms. Payton also alleges that, on another occasion, Mr. Olinger walked by her and addressed her as "bitch." *Id.* at 941. Ms. Payton maintains that she did not report this conduct to the Casino's human resources department, because she was already losing shifts at OTR after previously reporting Mr. Olinger's sexual harassment to the human resources department. *Id.* at 729.

Mr. Olinger denies that he engaged in any sexual harassment. *Id*. at 581-83; 600.

<u>The Defendant's Investigation</u>

It is undisputed that Defendant investigated Ms. Payton's sexual harassment claims after she raised these claims with the Casino's department of human resources. In this regard, the parties agree that a human resources official, Sherri Hollister, investigated Ms. Payton's claims, by interviewing Mr. Langton and Mr. Olinger and reviewing video surveillance footage of Mr. Olinger and Ms. Payton working together on Friday July 14, 2017, and on Wednesday July 19, 2017. *Id.* at 120-21; 375; 380; 1232-33.

During the investigation, Mr. Langton told Ms. Hollister that Ms. Payton had never

reported anything to him about Mr. Olinger. *Id*. at 1091-93. Defendant's investigators also reviewed the video of the two eight-hour shifts that Ms. Payton and Mr. Olinger worked together in July 2017, in approximately two hours. *Id*. at 402-03. It is undisputed that this video footage was not saved by Defendant.[2] *Id.* at 374-75.

Defendant determined that its investigation failed to corroborate Ms. Payton's allegations of sexual harassment. *Id.* at 139.

<u>Changes To Ms. Payton's Work Schedule</u>

It is undisputed that, after Ms. Payton filed a complaint of sexual harassment against Mr. Olinger, Defendant no longer scheduled Ms. Payton and Mr. Olinger to work together. J.R. at 104. It is also undisputed that, on August 29, 2017, Ms. Payton sent an email to her supervisor, Nicholas Nies, inquiring about why she had not been assigned shifts at OTR since reporting Mr. Olinger's conduct to the Casino's human resources department. *Id.* at 807; 935   In response, Mr. Nies told Ms. Payton that he instructed Mr. Arbogast to "keep an eye out for opportunities to schedule [her at OTR] when possible." *Id.* at 104.

Ms. Payton alleges that Defendant altered her work schedule, so that she would no longer be assigned shifts at OTR, in retaliation for her sexual harassment complaint. ECF No. 39 at 26-31. Defendant counters that the scheduling of bartenders at Rocky Gap was primarily "seniority-based" and that it did not retaliate against Ms. Payton by altering her work schedule. *Id*. at 27; 1037. In this regard, Mr. Arbogast testified during his deposition that Defendant could schedule employees "on a temporary basis to fill in positions, due to short staffing and staff turnover . . . but for a long-term position, you had to have had that seniority." *Id.*

It is undisputed that Ms. Payton was assigned to work shifts at OTR approximately two to four times per week before she reported Mr. Olinger's conduct to the Casino's human resources department. J.R. at 1073-81. It is also undisputed that Ms. Payton was assigned to work only two shifts at OTR during the one-month period after she reported the alleged sexual harassment. *Id.* at 1082-88.

---

[2] Plaintiff maintains that Defendant's investigation was not legally sufficient, because, among other things, Ms. Hollister did not interview Mr. Hovatter; the review of the 16-hours of video footage was rushed; and Defendant failed to interview other employees who could corroborate her sexual harassment claims, including, Amber Navalaney and Jana Cannon. ECF No. 39 at 13; 24; J.R. at 934; 1167-68.

5

<u>The Termination Of Ms. Payton's Employment</u>

On September 22, 2017, Ms. Payton sent another email to Mr. Nies stating that she was resigning from her bartender position at Rocky Gap. *Id*. at 676-77; 931-32. Ms. Payton's email stated in relevant part that:

> [I] feel disappointed about what I feel is a real lack of unity or teamwork . . . . I work only at [ALM] which is [notorious] for working harder and getting paid much less . . . . It's just too much for any self respecting hard working individual at a payrate of 5.60 an hour . . . . I have to be an advocate for my own healthy life . . . . I hope you take care of the one's who deserve to be heard & respected and good luck in all your future [endeavors].

*Id*. at 931. And so, Defendant terminated Ms. Payton's employment on September 25, 2017. *Id*. at 1090.

The EEOC and Ms. Payton contend that Ms. Payton ended her employment with Rocky Gap because of the significant reduction in the amount of tips that she earned while working shifts at ALM after reporting Mr. Olinger's conduct, in comparison to her prior earnings while working shifts at OTR. ECF No. 39 at 14; 28. Defendant counters that Ms. Payton resigned her bartender position at Rocky Gap due to her inability to get to work on time. J.R. at 3; 676-77; 931-32.

**B.     Procedural Background**

Plaintiff commenced this matter on September 28, 2020. ECF No. 1. On September 30, 2022, Defendant filed a motion for summary judgment and a memorandum in support thereof, pursuant to Fed. R. Civ. P. 56. ECF Nos. 38 and 38-1.

Plaintiff filed a response in opposition to Defendant's motion on October 28, 2022. ECF No. 39. Defendant filed a reply in support of its motion on November 30, 2022. ECF No. 41.

Defendant's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

### III. LEGAL STANDARDS

#### A. Fed. R. Civ. P. 56

A motion for summary judgment pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

#### B. Title VII And Hostile Work Environment Claims

Title VII prohibits employment discrimination based on race, color, religion, sex, and national origin. *See* 42 U.S.C. § 2000e. To establish a hostile work environment claim based upon sex, a Title VII plaintiff must allege workplace harassment that: "(1) was 'unwelcome'; (2) was based on [her] sex; (3) was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere'; and (4) was, on some basis, imputable to the employer.'" *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 302 (4th Cir. 2019) (quoting

*Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)).  Plaintiff must also present a particularized basis for alleging that discriminatory conduct was because of membership in a protected class.  *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 310 (D. Md. 2015).

      To demonstrate that conduct is severe or pervasive, a plaintiff must show: (1) that the employee was subjectively offended and (2) that a reasonable person in the employee's position would have found the conduct abusive or hostile.  *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 208 (4th Cir. 2014) (reversing district court finding that conduct was not severe or pervasive as a matter of law).  In this regard, the Fourth Circuit has held that sexually charged remarks can constitute actionable harassment even without physical touching.  *Id.* at 209 (citing *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334-35 (4th Cir. 2011)); *see also Bonar v. Romano*, 2010 WL 1258106, at *5 (S.D. Ohio March 26, 2010) (holding that approaching employee from behind and whispering in her ear contributed to hostile work environment).  And so, sexual harassment cases must be analyzed "with careful consideration of the social context in which particular behavior occurs and is experienced by its target."  *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998).

      To demonstrate that the harassing conduct was imputable to the employer, a plaintiff may show that the employer was negligent in failing to prevent harassment from taking place.  *Vance v. Ball State Univ.*, 570 U.S. 421, 448–49 (2013); *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998) (recognizing an employer's "affirmative obligation" to prevent harassment).  In cases of co-worker harassment, the plaintiff bears the burden of proving that the defendant employer was negligent.  *Vance*, 570 U.S. at 448-49.  And so, an employer is liable for co-worker harassment if it knew, or should have known, about the harassment and failed to take prompt and effective remedial action reasonably calculated toward ending the harassment and preventing its recurrence.  *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 332 (4th Cir. 2018); *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008).

      **C.**     **Retaliation**

      To establish a *prima facie* case of retaliation, a Title VII plaintiff must show that:  "(1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse

action." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2001). Complaining about sexual harassment is a protected activity. *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551–52 (4th Cir. 2015). And so, retaliation under Title VII is established upon proof that the employer engaged in conduct that a reasonable employee would have found to be materially adverse. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). An action is materially adverse if it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (internal citations omitted).

Relevant to this dispute, the question of whether a particular reassignment is a materially adverse employment action, depends upon the circumstances of the case, and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Given this, the Fourth Circuit has held that a decrease in income can constitute a materially adverse employment action. *Ray v. Int'l Paper Co.*, 909 F.3d 661, 670 (4th Cir. 2018) (citing *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999) (explaining that an actionable adverse employment action is one in which an employee suffers a "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion").

If a Title VII plaintiff establishes a *prima facie* claim for retaliation, the defendant employer can "show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). The burden then "shifts back to the plaintiff to demonstrate that the employer's purported non-retaliatory reasons 'were not its true reasons, but were a pretext for discrimination.'" *Lewis v. Balt. City Bd. of Sch. Comm'rs*, 187 F.Supp.3d 588, 595–96 (D.Md. 2016) (internal citations omitted). And so, the ultimate question for pretext is whether the decision-makers honestly believed their explanation for the decision at issue. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007).

D.     **Constructive Discharge**

Lastly, the Supreme Court has held that "[t]he constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that [her] 'working conditions become so intolerable that a reasonable person in the

employee's position would have felt compelled to resign.'" *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)). In such a situation, Title VII treats the employee's resignation as being tantamount to an actual discharge. *Id.* "A claim of constructive discharge, therefore, has two basic elements": (1) plaintiff must show that she was "discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign;" and (2) plaintiff must show that she "actually resigned." *Id.* And so, the level of intolerability required to state a claim of constructive discharge is higher than the showing required for a hostile work environment claim. *See Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019).

**IV.     ANALYSIS**

Defendant has moved for summary judgment in its favor on the EEOC's employment discrimination and retaliation claims, pursuant to Fed. R. Civ. P. 56, upon the grounds that: (1) the EEOC cannot prevail on its sexual harassment claim, because the sexual harassment alleged in this case was not severe and pervasive and there is no basis to impute liability on Defendant for Mr. Olinger's alleged sexual harassment; (2) the EEOC cannot establish that Ms. Payton experienced a materially adverse employment action to support its retaliation claim; and (3) Defendant has provided a legitimate non-discriminatory reason for its employment decisions with regards to Ms. Payton and the EEOC fails to advance any evidence to show pretext. ECF No. 38-1 at 15-25.

The EEOC counters that summary judgment in Defendant's favor is not warranted, because: (1) Mr. Olinger's alleged harassing conduct was severe and pervasive; (2) Defendant was negligent in preventing and addressing Mr. Olinger's alleged sexual harassment; (3) Defendant retaliated against Ms. Payton, and constructively discharged her, by allowing Mr. Olinger's sexual harassment to continue, reassigning Ms. Payton to ALM and discouraging complaints of sexual harassment in the workplace. ECF No. 39 at 10-28. And so, the EEOC requests that the Court deny Defendant's motion. *Id*. at 29

For the reasons that follow, the undisputed material facts in this case show that there is a factual basis to impute liability on Defendant for Mr. Olinger's alleged sexual harassment and that a jury could find Mr. Olinger's conduct to be so severe and pervasive as to create a hostile work environment. But, the undisputed material facts also make clear that the change to Ms. Payton's work schedule is not a materially adverse employment action under Title VII and that the

10

unrebutted evidence in this case fails to support the EEOC's constructive discharge claim. And so, for the reasons that follow, the Court **GRANTS-in-PART** and **DENIES-in-PART** Defendant's motion for summary judgment.

> **A.     Defendant Is Not Entitled To
> Summary Judgment On Plaintiff's Sexual Harassment Claim**
>
> **1.     There Is Sufficient Evidence For The EEOC To Establish
> That The Alleged Sexual Harassment Was Severe And Pervasive**

As an initial matter, Defendant argues without persuasion that the EEOC cannot establish that the alleged sexual harassment at issue in this case was severe and pervasive, to prevail on its hostile work environment claim. To the contrary, the undisputed material facts show that there is a genuine issue in dispute regarding whether Mr. Olinger's alleged conduct was so severe or pervasive as to alter the conditions of Ms. Payton's employment.

To establish a hostile work environment claim based upon sex, the EEOC must allege workplace harassment that: "(1) was 'unwelcome;' (2) was based on [Ms. Payton's] sex; (3) was 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere;' and (4) was, on some basis, imputable to the employer.'" *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 302 (4th Cir. 2019) (quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)). To demonstrate that the alleged conduct at issue here was severe or pervasive, the EEOC must also show: (1) that Ms. Payton was subjectively offended by the conduct and (2) that a reasonable person in Ms. Payton's position would have found the conduct abusive or hostile. *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 208 (4th Cir. 2014) (reversing district court finding that conduct was not severe or pervasive as a matter of law).

In this regard, the Fourth Circuit has made clear that sexually charged remarks can constitute actionable harassment, even without physical touching. *Id.* at 209 (citing *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334-35 (4th Cir. 2011)); *see also Bonar v. Romano*, 2010 WL 1258106, at *5 (S.D. Ohio March 26, 2010) (holding that approaching employee from behind and whispering in her ear contributed to hostile work environment). And so, the Court analyzes the sexual harassment claims in this case "with careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998).

11

Defendant argues that the EEOC cannot show that the sexual harassment alleged in this case was so severe or pervasive as to alter the conditions of Ms. Payton's employment, because the EEOC fails to present evidence to show that Mr. Olinger's conduct constitutes "actionable" sexual harassment, given that Ms. Payton and Mr. Olinger "only worked a total of ten shifts together" between June 11, 2017, and the date on which Ms. Payton reported his alleged sexual harassment. ECF 38-1 at 17. Defendant is correct in observing that the evidence shows that Ms. Payton and Mr. Olinger worked together for a period of four months and that they worked together during 10 shifts at OTR during this time period. J.R. at 1073-79. But, the Court agrees with the EEOC that the question of whether a reasonable person would have been objectively offended by Mr. Olinger's alleged conduct during this time period, which the EEOC maintains involved repeatedly rubbing his genitals against Ms. Payton's buttocks, coupled with repeated comments about and the groping of her buttocks, should be resolved by the finder of fact because it may be reasonably resolved in favor of either party to this action. *Anderson*, 477 U.S. at 250.

In this regard, the EEOC persuasively argues that a jury could reasonably conclude that a reasonable person could find Mr. Olinger's alleged conduct to be so severe or pervasive as to create a hostile work environment, because this Court has previously held that an objectively hostile work environment is created when an employee gropes a coworker's buttocks and when a male harasser presses his genitals into a female employee. *See Jones v. Fam. Health Ctrs. of Balt., Inc.*, 135 F.Supp.3d 372, 379 (D. Md. 2015) (denying summary judgment where harasser bumped into the plaintiff causing his genitals to rub against her); *Paroli v. DaVita Rx, LLC*, 962 F.Supp.2d 825, 831 (D. Md. 2013) (denying summary judgment where harasser positioned himself behind the plaintiff while she was backing out of a room so that her buttocks bumped against his crotch); *Williams v. Silver Spring Volunteer Fire Dept.*, 86 F.Supp.3d 398, 413 (D. Md. 2015) (denying summary judgment where the harasser touched his genitals against the plaintiff's lap). Notably, in this case, Defendant concedes that Ms. Payton reported to its human resources department that Mr. Olinger repeatedly bumped into her hips and buttocks while they were working together. ECF No. 38-1 at 16-17.

Ms. Payton also testified during her deposition that Mr. Olinger would whisper in her ear about things that he would like to do to her buttocks, and that Mr. Olinger would also grope her buttocks and touch her hips at the workplace. J.R. at 691-92; 1236. Ms. Payton further testified that, on two occasions, Mr. Olinger came behind her while she was pouring beer from a tap,

reached around her, and pressed himself against her buttocks, so that she could feel his genitals pressing into her. *Id.* at 731-32; 734; 939. There is also evidence before the Court to corroborate Ms. Payton's testimony, because on one occasion, Mr. Olinger's conduct was witnessed by another co-worker at Rocky Gap, Jana Cannon. *Id.* at 1167-68.

Given this evidence, when the facts of this case are construed in the light most favorable to Plaintiff, Defendant has not met its burden to show the undisputed material facts show that Mr. Olinger's alleged sexual harassment was not so severe or pervasive as to create a hostile work environment at Rocky Gap. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992). And so, for this reason, the Court DENIES Defendant's motion for summary judgment on this issue.

> 2. **The Undisputed Material Facts Show That Liability Can Be Imputed On Defendant**

Defendant's argument that the EEOC cannot establish that Mr. Olinger's alleged harassing conduct was imputable to Defendant is equally unavailing. The EEOC may show that Defendant was negligent in failing to prevent the alleged sexual harassment from taking place, to establish that Mr. Olinger's conduct was imputable on Defendant. *Vance v. Ball State Univ.*, 570 U.S. 421, 448–49 (2013); *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998) (recognizing an employer's "affirmative obligation" to prevent harassment). And so, Defendant can be found liable for Mr. Olinger's alleged sexual harassment, if it knew, or should have known, about the harassment and failed to take prompt and effective remedial action reasonably calculated toward ending the harassment and preventing its recurrence. *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 332 (4th Cir. 2018); *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008).

In this case, the undisputed material facts show that Defendant knew about Mr. Olinger's alleged sexual harassment of Ms. Payton, because Ms. Payton reported this harassment to her supervisors on July 14, 2017, and to Rocky Gap's human resources department on July 19, 2017. J.R. at 731-737. Given this, liability may be imputed on Defendant, if Defendant failed to take prompt and effective remedial action reasonably calculated toward ending this alleged harassment and preventing its reoccurrence.

Defendant argues that it undertook prompt and effective remedial action to address Ms. Payton's sexual harassment claims here, by investigating the harassment and no longer scheduling Ms. Payton and Mr. Olinger to work together. ECF No. 38-1 at 18-19. But, the unrebutted evidence before the Court lends support to the EEOC's claim that Defendant's actions were not reasonably calculated toward ending the harassment and preventing its reoccurrence for several reasons.

First, the unrebutted evidence before the Court shows that Mr. Olinger's conduct continued after Ms. Payton lodged her sexual harassment complaint. Notably, Ms. Payton testified during her deposition that Mr. Olinger continued to make harassing comments to her after she reported his conduct to human resources. ECF No. 39 at 15; J.R. at 724-26 (stating that she and Mr. Olinger were still required to attend pre-shift meetings and that Mr. Olinger would lean into her and make comments in her ear such as, "I'll make whatever comments I want to make about your rear-end and nothing is going to be done about it," when they would visit the casino vault). Ms. Payton also testified that she was reluctant to report Mr. Olinger's continuing sexual harassment after she filed her complaint, because she believed that her work assignments were being negatively impacted due to her complaint. ECF No. 39 at 15.

The evidence before the Court also raises questions about the sufficiency and merits of Defendant's investigation into Ms. Payton's sexual harassment claims. The EEOC alleges, and Defendant does not dispute, that Defendant failed to interview any of the witnesses that Ms. Payton identified as being able to corroborate her sexual harassment claims. ECF No. 39 at 12-13. Defendant also acknowledges that its investigators spent only two hours and eight minutes reviewing a 16-hour surveillance video showing security camera footage of the two shifts that Ms. Payton shared with Mr. Olinger on Friday July 14, 2017, and Wednesday July 19, 2017. J.R. at 1232-33. In addition, Defendant acknowledges that it elected not to preserve this video footage, thereby precluding any review of the video within the context of this litigation. *Id.* at 120-21; 374-75; 380.

Given this, the Court agrees with the EEOC that there is a genuine issue as to the material facts about Defendant's remedial actions in this case. And so, Court also DENIES Defendant's motion for summary judgment on this issue.

14

### B.      The EEOC Cannot Prevail On Its Retaliation Claim

While the Court is not persuaded that it is appropriate to grant summary judgment in Defendant's favor on the EEOC's sexual harassment claim, Defendant is on stronger ground in arguing that the EEOC cannot prevail on its retaliation claims in this case for two reasons.

First, the undisputed material facts in this case show that the EEOC cannot establish that Ms. Payton experienced a materially adverse employment action after she reported Mr. Olinger's conduct, because the change to her work schedule is not an adverse employment action under Title VII.  The Fourth Circuit has held that a change in work schedule is not typically an adverse employment action under Title VII.  *Parsons v. Wynne*, 221 F.Appx. 197, 198-99 (4th Cir. 2007).  And so, the Court agrees with Defendant that Ms. Payton's alleged reassignment to work more shifts at ALM is not an adverse employment action under Title VII in this case.

The EEOC's argument that Ms. Payton suffered an adverse employment action here, because shifts at ALM are significantly less favorable than OTR given that the amount of tips received at this bar are typically lower than OTR, is also not persuasive.  ECF No. 39 at 28.  Ms. Payton does not dispute that her wages, job title, level of responsibility or opportunity for promotion remained the same after her reassignment.  *Id.* at 26-29; *see also Polastre-Jackson v. Colvin*, No. ELH-17-228, 2017 WL 6501800, at *13 (D. Md. Dec. 15, 2017) (holding that "a reassignment does not constitute an adverse employment action when the reassignment causes no reduction in compensation, job title, level of responsibility, or opportunity for promotion*");
Boone*, 178 F.3d at 255-57 (stating that "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position.").  The Court also observes that there is no dispute in this case that Ms. Payton remained eligible to work shifts at OTR after she reported Mr. Olinger's conduct to Defendant and that she, in fact, did so on two occasions during the month prior to the termination of her employment.  J.R. at 1082-88.  The undisputed material facts similarly show that Ms. Payton was scheduled to work at both ALM and OTR before and after she complained of sexual harassment.[3]  *Id.* at 1073-79.

---

[3] The evidence before the Court shows that Ms. Payton's second most lucrative paycheck during her employment at Rocky Gap was for the pay period of September 7, 2017, through September 20, 2017,

Because the undisputed material facts in this case do not show that the alleged change to Ms. Payton's work schedule "had some significant detrimental effect on her," the EEOC cannot establish that Ms. Payton suffered from a materially adverse employment action to support its retaliation claim. *Cason-Johnson v. Balt. City Police Dept.*, 2021 WL 3930098, at *4 (D. Md. Sept. 2, 2021) (citing *Boone v. Goldin*, 178 F.3d 352, 255-57 (4th Cir. 1999). And so, the Court GRANTS Defendant's motion for summary judgment on this claim.

### C.  The EEOC Cannot Prevail On Its Constructive Discharge Claim

The undisputed material facts similarly show that the EEOC cannot prevail on its constructive discharge claim. To prevail on this claim, the EEOC must show that: (1) Ms. Payton was "discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign" and (2) Ms. Payton "actually resigned." *Green*, 578 U.S. at 555. And so, the EEOC must show that Ms. Payton's working conditions at Rocky Gap became so intolerable that a reasonable person "would have had no choice but to resign." *See Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019).

Again, the unrebutted evidence before the Court does not support this conclusion. As discussed above, there is no dispute that Ms. Payton's work schedule changed after she reported Mr. Olinger's conduct, because Defendant no longer assigned Ms. Payton and Mr. Olinger to work together at OTR. But the evidence before the Court shows that Ms. Payton continued to work at both OTR and ALM, and that her wages and other benefits did not change, after she reported Mr. Olinger's conduct.

While Ms. Payton may have not been satisfied with her new work assignments, Defendant correctly observes that the failure to receive a desired work schedule is not a "worse case" harassment scenario sufficient to establish that working conditions are so intolerable that a reasonable person would have had no choice but to resign. ECF No. 38-1 at 21-24 (quoting *Long v. First Union Corp. of Va.*, 894 F. Supp. 933 (E.D. Va. 1995), *aff'd*, 86 F.3d 1151 (4th Cir. 1996)). Given this, when considered in the light most favorable to Plaintiff, the undisputed material facts simply do not show that Ms. Payton was constructively discharged from Rocky

---

which occurred after she reported Mr. Olinger's conduct. J.R. at 1068. During this pay period, Ms. Payton worked one 8-hour shift at OTR on Wednesday, September 13, 2017, while the rest of her shifts were conducted at ALM. *Id.* at 1086.

16

Gap. And so, the Court also GRANTS Defendant's motion for summary judgment on the EEOC's constructive discharge claim.

## V. CONCLUSION

In sum, the undisputed material facts in this case show that a jury could find Mr. Olinger's conduct to be so severe and pervasive as to create a hostile work environment and that there is a factual basis to impute liability on Defendant for Mr. Olinger's alleged sexual harassment. The undisputed material facts in this case also make clear that the change to Ms. Payton's work schedule is not a materially adverse employment action under Title VII and that the unrebutted evidence before the Court fails to support the EEOC's constructive discharge claim. And so, for the foregoing reasons, the Court:

(1) **GRANTS-in-PART** and **DENIES-in-PART** Defendant's motion for summary judgment; and

(2) **DENIES** the EEOC's retaliation and constructive discharge claims.

The parties shall **FILE** a joint status report on or before **July 27, 2023**, stating their respective views on how this matter should proceed.

Judgment shall be entered accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge